IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 26-cv-01948-GPG

KARMPAL UNK, also known as Karmpal Karmpal,

Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, in her official capacity,
DAVID VENTURELLA,[1] Acting Director of Immigration and Customs Enforcement, in his official capacity,
TODD BLANCHE, Acting Attorney General, U.S. Department of Justice, in her official capacity,

Respondents.

---

**ORDER**

---

Before the Court is a Petition for Writ of Habeas Corpus (28 U.S.C. § 2241) (D. 1). The Court GRANTS IN PART the Petition for the following reasons. Because the briefing demonstrates that Petitioner Karmpal Unk's challenge is fundamentally legal in nature, the Court declines to hold a hearing regarding Petitioner's challenge. *See* 28 U.S.C. § 2243.

## I. FACTS

This civil action arises from Petitioner's detainment at Immigration and Customs Enforcement's (ICE) Denver Contract Detention Facility in Aurora, Colorado pending a

[1] Substituted pursuant to Fed. R. Civ. P. 25(d).

determination in his removal proceedings.[2] Petitioner is a native of India who has been in ICE detention since unlawfully entering the United States in November 2024 to seek asylum (D. 1 at ¶¶ 1–3). On January 15, 2025, Respondents issued Petitioner a Notice to Appear and initiated removal proceedings (*id.* at ¶ 39). An Immigration Judge then granted Petitioner asylum on September 15, 2025; however, Respondents appealed that decision to the Board of Immigration Appeals (BIA) on October 2, 2025 (*id.* at ¶ 4). As of September 17, 2026, no briefing schedule has been set and no hearings have been scheduled in the asylum appeal (D. 16). Petitioner filed this habeas case on May 5, 2026, arguing that his continued detention is in violation of the Due Process Clause of the Fifth Amendment (D. 1).

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

Petitioner concedes that he is detained under 8 U.S.C. § 1225(b)(1) (*see* D. 1 at 7), which mandates detention of noncitizens pending the conclusion of removal proceedings. *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) ("[r]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded."); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1234 (10th Cir. 2026) ("§ 1225 makes no mention of bond and instead mandates that noncitizens subject to its authority 'shall be detained.'"). Generally, prolonged

[2] The Court draws the operative facts as set forth in the Petition for Writ of Habeas Corpus (28 U.S.C. § 2241) (D. 1).

detention under § 1225(b) does not raise due process concerns. *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."). While "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001), the Supreme Court has determined that § 1225(b) does not permit indefinite detention because detention pending removal proceedings "has 'a definite termination point': the conclusion of removal proceedings." *Jennings,* 583 U.S. at 304 (quoting *Demore*, 538 U.S. at 529). Courts, including this one, have thus frequently denied habeas corpus petitions of noncitizens raising due process challenges to the duration of their § 1225(b) detention. *See e.g.*, *Espinoza v. Ceja,* No. 25-CV-01120-GPG, 2025 WL 4957947 (D. Colo. May 21, 2025); *Utoliti v. Ceja,* No. 25-CV-00418-GPG-CYC, 2025 WL 2418598 (D. Colo. May 29, 2025).

Petitioner's detention, however, presents a non-general circumstance. Unlike the petitioners in *Utoliti* and *Espinoza*, Petitioner here has not received a briefing schedule or hearing date for the BIA appeal of his asylum determination. *See Utoliti,* 2025 WL 2418598, at *2 (BIA set briefing schedule and hearing on petitioner's asylum appeal within 21 days of appeal being filed); *Espinoza,* 2025 WL 4957947, at *3 (BIA set briefing schedule and hearing on petitioner's asylum appeal within 15 days of appeal being filed). Petitioner was granted asylum in September 2025. The Government then decided to appeal that decision. It has now been more than one full year since Petitioner was granted asylum and just days shy of one full year since the Government submitted its appeal—and *still* no briefing schedule has been set and no hearings scheduled for the appeal. Even after briefing is completed, it typically takes months for the BIA to issue a final

decision (D. 1 at 11). Furthermore, there is no deadline for the BIA to set a briefing schedule or issue a final decision. All said, Petitioner is suspended in removal proceeding purgatory.

Although the Constitution may allow for prolonged (if not technically indefinite) detention under § 1225(b), the Due Process Clause still prohibits arbitrary deprivations of liberty. *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). As this Court has previously acknowledged, the Supreme Court's decisions in *Zadvydas, Demore,* and *Jennings* do not foreclose "the possibility of an as-applied due process challenge [to prolonged detention under § 1225(b)] *predicated on government-caused delay.*" *Utoliti v. Ceja*, No. 25-CV-00418-GPG-CYC, 2025 WL 2418598, at *4 (D. Colo. May 29, 2025) (emphasis added). Looking to Justice Kennedy's concurrence in *Demore*, the Court wrote:

> This Court's takeaway . . . is that, so long as the government reasonably affords noncitizen detainees in ongoing immigration proceedings administrative process to challenge the merits determinations that are keeping them in custody, continued custody is permissible. In other words, perhaps it is possible that detentions under §§ 1225(b) and 1226(c) might become unreasonable if the government arbitrarily extends or suspends detention, removal, or asylum proceedings."

*Id.* (citation modified).[3] Several courts across the country have adopted this approach and held that, at some point, prolonged detention under Section 1225(b) violates due process. *See Richards v. Choate,* No. 1:25-CV-03134-DDD-STV, 2025 WL 4474703, at *5 (D. Colo. Dec. 5, 2025) (listing cases).

---

[3] While Justice Kennedy's *Demore* concurrence is not binding, this Court, like many others, views it as persuasive. *See, e.g.*, *Ramirez v. Watkins*, No. CIV.A. B:10-126, 2010 WL 6269226, at *8 (S.D. Tex. Nov. 3, 2010) (noting "prior Supreme Court decisions" rejecting the proposition "that an opinion written by the majority that does not directly challenge legal interpretations found in a concurrence can be read to acquiesce to the interpretations found in a concurrence" but "[n]everthless" finding Justice Kennedy's concurrence persuasive); *Mehmood v. Sessions*, No. 18-CV-21095, 2018 WL 10760347, at *20 (S.D. Fla. Nov. 28, 2018) ("Although Justice Kennedy's concurrence in *Demore* has no precedential value, it harmonizes with the majority's reasoning. So much so, that post-*Demore* precedent often relied upon Justice Kennedy's concurrence."), *report and recommendation adopted as modified sub nom. Mehmood v. United States Att'y Gen.*, No. 18-21095-CIV, 2019 WL 8892625 (S.D. Fla. Jan. 29, 2019).

Petitioner's case presents just such prolonged detention due to arbitrary, government-caused delay. The fact that after one year Petitioner still has not received any timeline for the government's appeal of his grant of asylum and that Respondent has not offered any explanation for this delay is a clear indication of an arbitrary suspension of proceedings. It is also evidence that the government is not affording Petitioner process to challenge the merits determinations that are keeping him in custody. Without a hearing, Petitioner has no opportunity to defend his grant of asylum and obtain release from custody. Accordingly, Petitioner has shown that his prolonged detention under § 1225(b) violates his due process rights. The Court cannot say specifically at what date Petitioner's detention became violative of his due process rights; however, over a year without even a briefing schedule clearly crosses the line.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition (D. 1) is GRANTED IN PART to the extent Petitioner seeks a bond hearing at which Respondents bear the burden of proof of showing Petitioner's continued detention is proper. *See Barreno v. Baltasar,* No. 025-CV-03017-GPG-TPO, 2025 WL 3190936, at *3 (D. Colo. Nov. 14, 2025) (holding that due process requires the government prove risk of flight by a preponderance of the evidence and prove dangerousness to any other person or to the community by clear and convincing evidence). Respondents shall provide Petitioner with a bond hearing within SEVEN DAYS of receiving notice of this Order and Respondents have the responsibility to ensure that the government applies those burdens and provides a sufficient record for review. Additionally, Respondents SHALL notify Petitioner and any counsel who has entered an appearance in this action of the date, time, and place of the hearing no less than 24 hours prior to the beginning of the hearing. Respondents are FURTHER

ORDERED to file a status report within FIVE DAYS of Petitioner's bond hearing, stating whether Petitioner has been granted bond, and, if Petitioner's request for bond was denied, the reasons for that denial.

DATED September 18, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge